UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO ORLANDO MONTANO,<br><br>  Petitioner,<br><br>v.<br><br>CYNTHIA Y. TAMPKINS, Warden,<br><br>  Respondent. | Case No. 8:20-cv-00350-JLS-KES<br><br>ORDER TO SHOW CAUSE WHY PETITION SHOULD NOT BE SUMMARILY DISMISSED |

**I.**

**INTRODUCTION**

Petitioner filed a Petition for Writ of Habeas Corpus by a person in state custody pursuant to 28 U.S.C. § 2254 (the "Petition") challenging his 2017 convictions for assaulting A.P. (1) with intent to commit rape, and (2) with force likely to produce great bodily injury. (Dkt. 1 at 2.[1]) Petitioner's claims for relief all concern the admission of testimony by R.S. – a young woman who testified that Petitioner assaulted her in a prior incident in 1992.

---

[1] Docket page cites refer to the pagination imposed by the Court's e-filing system.

Under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition …." The Court orders Petitioner to show cause why his Petition should not be summarily dismissed for the reasons explained below.

## II.

## FACTUAL BACKGROUND

The italicized facts below are taken from the unpublished California Court of Appeal decision on Petitioner's direct appeal. People v. Montano, No. G055803, 2019 Cal. App. Unpub. LEXIS 6337 (Sep. 23, 2019). Unless rebutted by clear and convincing evidence, these facts may be presumed correct. Tilcock v. Budge, 538 F.3d 1138, 1141 (9th Cir. 2008); 28 U.S.C. § 2254(e)(1).

*Charged Offenses*

*In the early afternoon of December 10, 2013, A.P. went for a run on the asphalt trail that loops around Walnut Canyon Reservoir in Anaheim. As she completed her first lap, she saw [Petitioner] taking pictures. He said "Hi" to her, and she responded in kind as she ran by.*

*A few minutes later, she slowed down and started walking. While walking, she noticed [Petitioner] running in her direction. She thought it odd as he was running in a suit or blazer and matching pants. He caught up and was trying to talk to her, so she removed her headphones. [Petitioner] walked a few feet to A.P.'s left and complimented her running. He introduced himself as "Mario" and extended his hand. As soon as A.P. reached out to shake his hand, she suspected something was wrong based on [Petitioner's] body language and the way he was looking at her. When their hands touched, A.P. flinched and tried to pull her hand back but [Petitioner's] grasp tightened.*

*[Petitioner] lunged at her, knocking her to the ground. A.P. landed on her side in the dirt next to the trail with [Petitioner] on top of her. [Petitioner] rolled*

2

*her onto her back, and the two ended up in a concrete ditch beside the trail with [Petitioner] straddling her. A.P. screamed for help and hit [Petitioner] in an effort to free herself. [Petitioner] countered by trying to muffle her screams and restrain her arms. She tasted blood in her mouth and thought she had chipped a tooth. [Petitioner] did not say anything, but he grabbed her tank top and pulled it hard, causing it to tear. At one point during the struggle, [Petitioner] reached down in the area of his belt or zipper.*

*A.P. continued to fight [Petitioner], hitting him in the head, trying to gouge out his eyes, and using her legs to move out from underneath him. As she was trying to wiggle away from him, [Petitioner] grabbed her right leg with both of his arms and bit her leg with a wet but not painful bite. She repeatedly kicked [Petitioner] with her left leg and was eventually able to free herself by slipping out of her right shoe.*

*Once freed, A.P. ran to a nearby neighborhood and told the first person she saw that she had been attacked. The woman took A.P. inside her home and called the police. On the phone, A.P. explained what had happened and gave a description of her attacker.*

*An officer dispatched to the reservoir regarding the assault noticed [Petitioner], who matched the description of the possible suspect, "walking extremely fast" away from the trail and toward the roadway. [Petitioner] was carrying a long-sleeve dress shirt and a sport coat under his t-shirt and dropped these items when the officer honked his car horn to attract [Petitioner's] attention. [Petitioner] also had scratches on the back of his right hand.*

*A.P. was taken by a police officer to [Petitioner's] location, and she identified [Petitioner] as her attacker. As a result of the attack, she had scratches on most of her body, abrasions on her right elbow, and a bite mark on her leg. She also lost a tooth as a result of blunt trauma during the incident. In her statement to police that day, A.P. said the more [Petitioner] came toward her to shake her hand,*

*the more she backed away and that she might have fallen into a ditch while backing away from [Petitioner]. At trial, she clarified she fell into a ditch because [Petitioner] tackled her.*

*[Petitioner] was interviewed at the police station a few hours after the incident. He denied any contact with A.P. and claimed he got the scratches on his hand when he fell chasing after his water bottle that rolled down the hill.*

*When he testified at trial, [Petitioner] admitted having contact with A.P. but explained the incident was a misunderstanding. He had been walking on the trail and taking pictures when he saw A.P. He walked up to her and introduced himself because he had questions about the trail. As A.P. went to shake his hand, she looked at him and then suddenly backed up. She lost her balance and fell off the trail into a ditch. As A.P. was falling, [Petitioner] tried to grab her hand, but her momentum pulled them both down and he landed on top of her. A.P. immediately screamed for help, started hitting and kicking him, and trying to push him away. [Petitioner] made an effort to block her blows but did not cover her mouth or grab her tank top. He was trying to get away from her as much as she was trying to get away from him. Their entanglement lasted five to 10 seconds, after which A.P. went running in one direction and he ran away in the other. The experience frightened [Petitioner] and when the police interviewed him later that day, he repeatedly lied and denied everything because the police had made negative comments about him and his heritage, causing him to believe they would not be fair to him.*

***Uncharged Prior Offense***

*On April 2, 1992, 17-year-old R.S. was walking home alone around 9:40 p.m. When she was near the intersection of First and Flower Streets in Santa Ana, an area frequented by prostitutes, she noticed [Petitioner] walking behind her. She crossed the street and [Petitioner] followed. He caught up to her and grabbed her from behind. When she fought back, he punched her in the face with his fists,*

> *without saying anything. [Petitioner] knocked R.S. to the ground. Struggling to get back up, she hit [Petitioner] and screamed for help. [Petitioner] knocked her to the ground again when she got back up. This sequence repeated multiple times until [Petitioner] knocked her down and sprayed her eyes with self-defense spray. Unable to see, R.S. felt her shirt being pulled up and her pants being pulled down. She screamed for help and continued to fight back. Some people came to her aid and [Petitioner] ran away. R.S.'s shirt had been ripped but was not completely torn off.*
>
> *R.S. admitted she was previously convicted of petty theft in 2010 and robbery in 2011. She did not recall telling a police officer investigating the incident in 1992 that defendant approached her and offered her $100 for sex.*
>
> *In his testimony, [Petitioner] also addressed the incident with R.S. and denied assaulting her. He approached R.S. thinking she was a prostitute and offered her $100 for sex. When she rejected his initial offer, he offered her $200. Although she agreed at first, she changed her mind, called him a "monster," and told him to get lost. When he tried to get her to reconsider, she started pushing him and trying to scratch his face. Even though she was hitting him and cursing at him, he did not strike her, but he did spray her with dog repellant to stop her attack. He did not force her to the ground, grab her shirt, or pull down her pants.*

Montano, 2019 Cal. App. Unpub. LEXIS 6337, at *2-7. The California Court of Appeal affirmed the judgment, and the California Court of Appeal summarily denied review. People v. Montano, No. S258875, 2019 Cal. LEXIS 9248 (Dec. 11, 2019).

## III.

## CLAIMS

The Petition purports to raise four claims, which the Petition says were raised in the state courts on direct appeal. (Pet. at 5, 17.) To supply the facts and legal argument supporting each claim, Petitioner attaches pages from his counseled brief

5

on direct appeal to the California Court of Appeal.  (Id. at 7-16, 19-20, 22-27.) Liberally construing the Petition and considering the excerpts from Petitioner's counseled appellate briefing, the Court construes the Petition as raising the following two claims:

Ground One: The trial court's decision to admit evidence of the 1992 assault on R.S. was erroneous under California law because the court incorrectly analyzed the probative value and prejudicial effect of the evidence.  (See id. at 5, 14-16 [arguing that the trial court "abused its discretion" by admitting this evidence]; id. at 6 [arguing that, under California Evidence Code section 1101, "evidence of a defendant's prior bad acts is generally inadmissible to show that defendant was more likely to have committed the charge[d] crime"]; id. at 17, 19-20, 22 [arguing that, in assessing whether to admit the evidence, the trial court "overestimated the probative … value of the evidence and underestimated its prejudicial effect"].)

Ground Two: The admission of this evidence violated Petitioner's constitutional right to due process because it rendered his trial unfair.  (Id. at 17 [arguing that the admission "violated [Petitioner's] constitutional right to a fair trial"]; id. at 22-26 [counseled briefing arguing same].)

## IV.
## STANDARD OF REVIEW

As discussed further below, the California Court of Appeal denied Petitioner's claims on the merits.  The California Supreme Court's subsequent, silent denial is presumed to have relied on the same reasoning.  See generally Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991).

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Petitioner is entitled to habeas relief only if the state court's decision on the merits "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "(2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

The relevant "clearly established Federal law" consists of only Supreme Court holdings (not dicta), applied in the same context that petitioner seeks to apply it to, existing at the time of the relevant state court decision. Premo v. Moore, 562 U.S. 115, 127 (2011). A state court acts "contrary to" clearly established Federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts. Price v. Vincent, 538 U.S. 634, 640 (2003). A state court "unreasonably appli[es]" clearly established federal law if it engages in an "objectively unreasonable" application to the facts of the correct governing legal rule. White v. Woodall, 572 U.S. 415, 425 (2014) (rejecting previous construction of section 2254(d) that a state court decision involves an unreasonable application of clearly established Supreme Court law if the state court "unreasonably refuses to extend a legal principle to a new context where it should apply"). Habeas relief may not issue unless "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the United States Supreme Court's] precedents." Harrington v. Richter, 562 U.S. 86, 103 (2011). "[T]his standard is 'difficult to meet,'" Metrish v. Lancaster, 569 U.S. 351, 358 (2013), as even a "strong case for relief does not mean the state court's contrary conclusion was unreasonable," Richter, 562 U.S. at 102.

## V.

## DISCUSSION

**A. GROUND ONE: Whether The Trial Court Abused Its Discretion, Under California Law, in Admitting R.S.'s Testimony.**

**1. Relevant California Law**

California Evidence Code section 1101 generally prohibits the admission of evidence to show a defendant's propensity to commit a particular crime. California Evidence Code section 1108(a), however, creates an exception to this general rule,

7

as follows:

> In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352.

Cal. Evid. Code § 1108; see also Cal. Evid. Code § 352 (giving a trial court discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury").

The purpose of section 1108(a) is to allow jury to consider prior sexual offenses as evidence of defendant's propensity to commit the charged sexual offense. People v. Fitch, 55 Cal. App. 4th 172 (1997). The California Legislature "has determined the need for this evidence is 'critical' given the serious and secretive nature of sex crimes and the often resulting credibility contest at trial." People v. Falsetta, 21 Cal. 4th 903, 911 (1999). The California Supreme Court has held that Section 1108 does not violate due process on its face. Id. at 912-22.

### 2. Denial of this Claim by the California Courts

On direct appeal, Petitioner argued that the trial court improperly admitted this evidence. The California Court of Appeal denied relief, reasoning:

*[Petitioner] asserts the similarities between the prior offense and the charged sexual assault were "not significant enough to balance out the remoteness." We disagree. The prior and current assaults bear significant similarities. In each, [Petitioner] followed a woman walking by herself, and then with few or no words exchanged, he knocked her to the ground and tried to pull her shirt off or up. After being knocked to the ground, A.P. saw [Petitioner] reach toward his belt or zipper, while R.S., whose sight was impaired by the self-defense spray, felt [Petitioner] trying to pull down her pants. When each victim resisted*

8

*and screamed for help, [Petitioner] used force to try to further his desires and keep her from getting up. [Petitioner] did not say anything to either victim during the physical struggle nor did he grope either of them. This is not a "signature crime" by any means, but it is not required to be. The significant similarities between the charged and uncharged assaults balance out the remoteness of the prior assault.*

*Despite the amount of time between the charged and uncharged assaults, R.S.'s testimony concerning the prior assault had substantial probative value not only because of the similarities between the two attacks but also because R.S. was a source independent of A.P. ... We agree with the trial court that [Petitioner's] conduct in 1992 was "highly probative to whether he has a propensity to" assault women with the intent to commit a sex act. ...*

*Arguing the court underestimated the prejudicial effect of the propensity evidence, [Petitioner] focuses on what the jury was told about the charges relating to the prior assault. Pursuant to a stipulation of the parties, the jury was told that in 1992, [Petitioner] was charged with and acquitted of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)). On appeal, [Petitioner] contends the jury also should have been informed that he was convicted of misdemeanor assault or battery. He asserts this omission "exacerbated the risk that the jury would seek to 'punish' [him] for prior conduct it would have viewed as unrevenged," making the prior misconduct evidence substantially prejudicial. ... We are not persuaded by [Petitioner's] argument.*

*We begin by noting the **defense** requested that the jury not be informed of [Petitioner's] misdemeanor conviction. ...*

*The possibility of confusing the issues is but one factor in the court's balancing process under section 352. ... [T]he jurors were instructed with CALCRIM No. 1191, informing them that if they decided [Petitioner] committed the uncharged offense they could use it as propensity evidence with respect to the charge of assault with the intent to commit rape in count 1 but warned them that*

9

*this evidence alone was insufficient to find [Petitioner] guilty of the charged offense and was only one factor to consider along with the other evidence. Moreover, the record shows that during their deliberations, the jurors focused on A.P.'s testimony as they requested read back of portions of her testimony, not R.S.'s.*

*In exercising its discretion under section 352, the court properly considered all of the factors in weighing the probative value of the prior misconduct evidence against its "prejudicial and time-consuming effects." … The court looked at whether the propensity evidence was more inflammatory than the charged acts and noted the alleged conduct in both was the same — an assault with the intent to commit a sex offense. The court also found admission of the prior offense evidence would not require an undue consumption of time as it would only involve one witness. The court was correct as R.S.'s testimony was not extensive and accounts for just 24 pages of transcript. We conclude the court did not abuse its discretion by admitting evidence of [Petitioner's] assault upon R.S. in 1992.*

Montano, 2019 Cal. App. Unpub. LEXIS 6337, at *15-20.

### 3. Analysis

The Supreme Court has explained, "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Thus, "[E]videntiary rulings based on state law cannot form an independent basis for habeas relief." Rhoades v. Henry, 638 F.3d 1027, 1034 n. 5 (9th Cir. 2010).

To the extent Petitioner is arguing that the trial court should not have admitted the evidence under California law, this is not a reason to grant federal habeas relief. This Court is bound by the state appellate courts' conclusion that the trial court did not err, as a matter of California law, in ruling that evidence was admissible under the California Evidence Code. See Bradshaw v. Richey, 546 U.S.

74, 76 (2005); Medley v. Runnels, 506 F.3d 857, 862 (9th Cir. 2007). Thus, Petitioner does not appear to be entitled to relief on Ground One.

**B.     GROUND TWO: Whether Admission of R.S.'s Testimony Violated Petitioner's Federal Due Process Rights.**

### 1.    Denial of this Claim by the California Courts

Petitioner claims that by allowing the admission of R.S.'s testimony about the 1992 incident, the trial court violated his due process right to a fair trial. (See Pet. at 17, 22-26.) The California Court of Appeal found that, because R.S.'s testimony was properly admitted under state law, Petitioner's "claim that the admission of this evidence rendered his trial fundamentally unfair and violated his constitutional right to due process" also failed. Montano, 2019 Cal. App. Unpub. LEXIS 6337, at *20.

### 2.    Analysis

"The Supreme Court has established a general principle that evidence that 'is so extremely unfair that its admission violates fundamental conceptions of justice' may violate due process." Alberni v. McDaniel, 458 F.3d 860, 864 (9th Cir. 2006) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)). However, the "Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process," and "it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009). Similarly, the United States Supreme Court has not ruled on whether the use of propensity evidence violates due process. In fact, it has expressly declined to do so. Estelle, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."); see also Alberni, 458 F.3d at 866 ("We cannot conclude that the Nevada Supreme Court acted in an objectively unreasonable

manner in concluding that the propensity evidence introduced against Mr. Alberni did not violate due process, given that <u>Estelle</u> expressly left this issue an 'open question.'").

As discussed in Section IV above, the existence of U.S. Supreme Court precedent is a prerequisite to habeas relief pursuant to 28 U.S.C. § 2254(d)(1). Accordingly, district courts in California generally reject federal habeas claims based on the admission of propensity evidence, because such claims cannot establish that the California courts unreasonably applied Supreme Court precedent. <u>See</u>, <u>e.g.</u>, <u>Tran v. Kernan</u>, No. 17-cv-2132-, 2018 U.S. Dist. LEXIS 112160, at *55, 2018 WL 3303277, at *19 (S.D. Cal. July 5, 2018) ("There is no established Supreme Court precedent governing a trial court's discretionary decision to admit evidence" under Cal. Evid. Code sections 1108(a) and 352); <u>Estes v. Frauenheim</u>, No. 14-cv-2192, 2016 U.S. Dist. LEXIS 173095, at *25-26 (E.D. Cal. Dec. 13, 2016) ("The United States Supreme Court 'has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes.' … Rather, the Supreme Court has expressly left open this question.") (citation omitted). Thus, Petitioner does not appear to be entitled to relief on Ground Two.

//
//
//
//
//
//
//
//

# VI.
# CONCLUSION

**On or before March 26, 2020**, Petitioner shall file a response to this Order to Show Cause explaining why any of his claims allege a violation of federal law under established Supreme Court precedent, such that he is entitled to relief under 28 U.S.C. § 2254(d).

DATED: February 28, 2020

_____
KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE